# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                        No. 3:23-cr-100-BJB

QUINNTON DAWSON

\* \* \* \* \*

## OPINION REGARDING SENTENCING ENHANCEMENTS UNDER 18 U.S.C. §§ 2251, 2252A

A jury convicted Quinnton Dawson of nine federal counts relating to child pornography. The offenses occurred shortly after Dawson received "shock probation" and early release from a 5-year sentence for 26 state child-porn offenses.[1] Despite a prohibition against unmonitored online activity, Dawson began soliciting and trading explicit photographs and videos of, among other grotesque scenes, young children being raped or otherwise forced to engage in sexual conduct. Then his offensive actions spread from the internet to the real world. Within months of his release, Dawson had befriended a vulnerable single mother who was new to the area, moved in, groomed her four-year-old daughter, repeatedly filmed her in compromised and suggestive poses and clothing, repeatedly filmed himself penetrating the girl orally and humping her backside, and manipulated those images to simulate other abhorrent sexual acts. As described in a previous opinion denying Dawson's motion for acquittal, DN 116 at 1–9, the jury convicted him of three counts of sexual exploitation of a child; five counts of either receiving, distributing, or possessing child pornography; and (in the second phase of a bifurcated trial) one count of committing these offenses while required to register as a sex offender.

**A.  Statutory Sentencing Enhancements.** The undisputed Sentencing Guidelines range for these offenses would've been life imprisonment. But no count of conviction carried a statutory maximum sentence that high. And the statutory

---

[1] According to the presentence report—not contested in this respect by either party—a Kentucky court convicted Dawson in 2020 of 25 counts of possessing material portraying a sexual performance by a minor and 1 count of distributing such material. ¶ 85. The parties agree that the 27th count (distribution of sexually explicit images) didn't concern *child* pornography.

minimum and maximum sentences for all but one of these offenses increased if Dawson had previously been convicted of a prior child-pornography offense:

- Counts 1–3:       15–30 years increased to 25–50 years
- Counts 4–7:       5–20 years increased to 15–40 years
- Count 8:          0–10 years increased to 10–20 years

This increase is mandated by federal sentencing laws, applicable to child-pornography offenses, which authorize longer sentences for repeat offenders. *See generally United States v. Armes*, 953 F.3d 875, 878 (6th Cir. 2020) (describing this statutory scheme). The Government and the U.S. Probation Office treat Dawson as a repeat offender based on his prior Kentucky convictions for possessing and distributing child pornography, which they (understandably) take to relate to "the possession or distribution of child pornography," as that phrase is used in the federal sentencing-enhancement statute. *See* PSR ¶ 115 (applying enhanced ranges from 18 U.S.C. §§ 2251, 2252A).

But Dawson contends that under the "categorical approach" of legally classifying prior convictions based on what fact patterns might've supported them—rather than submitting to juries the factual question of what fact patterns *actually* supported them—his Kentucky offenses don't necessarily qualify. That's because he could've, theoretically, violated the relevant state statutes just by trading photos of (for instance) children who were merely nude, not sexualized. *See* Sentencing Memorandum (DN 112) at 8–11.

Section 2252A concerns the possession, receipt, and distribution of child pornography (Counts 4–8). As noted above, if applicable it increases the mandatory minimum and maximum sentences for some of these offenses from a range of 5–20 years to a range of 15–40 years. The enhancement triggers if the defendant "has a prior conviction under" (as relevant) "the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography." § 2252A(b)(1).

Section 2251, which concerns the production of child pornography, authorizes one extended range, 25–50 years, for a defendant who "has one prior conviction under … the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, … or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography." § 2251(e). It authorizes a second, even longer range of 35 years to life for a defendant

who "has 2 or more prior convictions under … the laws of any State relating to the sexual exploitation of children." *Id.*[2]

The statutory scheme goes on to define several critical terms, including child pornography:

> any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—
>
> > (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
> >
> > (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or
> >
> > (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

18 U.S.C. § 2256(8).

And "sexually explicit conduct" generally means "actual or simulated":

> > (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
> >
> > (ii) bestiality;
> >
> > (iii) masturbation;

---

[2] Dawson arguably qualifies for the even higher range—35 years to life—because a Kentucky court convicted him of not one but 26 counts related to child pornography. On its face, the statute merely asks whether the defendant has "2 or more convictions" for qualifying offenses. This differs from the Armed Career Criminal Act, which asks whether those prior offenses were committed on different "occasions." *See Wooden v. United States*, 595 U.S. 360, 365 (2022) (interpreting the "'occasions' clause" in the Armed Career Criminal Act). Nothing in § 2251(e), by contrast, requires that the defendant committed his prior offenses on different occasions, or was charged or convicted in different proceedings.

The Government, however, never raised the possibility that Dawson might be subject to this higher range. Nor did the U.S. Probation Office or the defense. Given that consensus, the Court relied on the intermediate range.

3

(iv) sadistic or masochistic abuse; or

(v) lascivious exhibition of the anus, genitals, or pubic area of any person;

18 U.S.C. § 2256(2)(A).[3]

**B. Permissible Fact-Finding.** Dawson advanced two reasons why, in his view, neither enhancement lawfully applied to him. He first insisted that the Court could rely on his past convictions only if a jury found, beyond a reasonable doubt, both that he'd in fact *been* convicted and that those convictions fall within the federal sentencing enhancements set out above.

This view is incorrect. Under binding Supreme Court precedent, judges may "find," at sentencing and by a preponderance of the evidence, "what crime, with what elements, the defendant was convicted of" in a past proceeding. *Erlinger v. United States*, 602 U.S. 821, 838 (2024) (quoting *Mathis v. United States*, 579 U.S. 500, 511–12 (2016)). This rule, derived from the Supreme Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), has "c[o]me under scrutiny" but repeatedly avoided abrogation, *Erlinger*, 602 U.S. at 837–38. Supreme Court "precedents have consistently read *Almendarez-Torres*"—and therefore the Sixth Amendment—"as permitting a judge to find only the fact of a prior conviction and the elements required to sustain it." *Id.* at 843. This is the case even though the Constitution guarantees defendants the right to have juries, not judges, find other pertinent facts supporting a conviction beyond a reasonable doubt.

Dawson, like several scholars and judges, sees this distinction as facile and ahistorical. *Almendarez-Torres*, he observes, "is problematic," has faced "strong"

---

[3] Just for § 2256(8)(B), "sexually explicit conduct" means:

(i) graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited;

(ii) graphic or lascivious simulated;

(I) bestiality;

(II) masturbation; or

(III) sadistic or masochistic abuse; or

(iii) graphic or simulated lascivious exhibition of the anus, genitals, or pubic area of any person.

18 U.S.C. § 2256(2)(B).

"criticism," and has effectively been anticipatorily overruled such that sentencing courts should instead "follow the principle set forth in *Erlinger*." Sentencing Memorandum at 6–7. He concedes, however, that *Almendarez-Torres* is "still controlling law." *Id.* at 7. And "it is [the Supreme] Court's prerogative alone to overrule one of its precedents," "wobbly" or "moth-eaten" as its "foundations" may be. *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) (quotation marks omitted).

Even if a jury needn't find the fact of Dawson's prior convictions, he argues, "a jury should determine whether the prior conviction qualifies as a predicate conviction." Sentencing Memo at 8. In protesting that a "jury" must "fin[d] beyond a reasonable doubt that [he] had a prior qualifying conviction that would result in a higher mandatory sentenc[e]," *id.* at 5, Dawson asserts an entitlement not just to jury factfinding but jury law-application.

But although the law recognizes a role for juries in finding facts relevant to sentencing, it doesn't assign juries, rather than judges, the complex legal task of *applying* the categorical approach to prior convictions. That is, deciding whether the elements of a statute governing a prior conviction necessarily fall within the scope of the federal law describing qualifying offenses. For better or worse, the appellate courts have construed that task as a legal question for the judge, not a factual finding for the jury. *See, e.g.*, *United States v. Mateen*, 806 F.3d 857, 859 (6th Cir. 2015) ("This Court reviews *de novo* a district court's legal conclusion that a prior conviction triggers a mandatory minimum sentence.") (quoting *United States v. Gardner*, 649 F.3d 437, 442 (6th Cir. 2011)).

In fact, the "elements-centric, formal categorical approach" was *designed* to eliminate the need for jury involvement in sentencing by making all the relevant questions legal rather than factual. *Descamps v. United States*, 570 U.S. 254, 267 (2013) (the categorical approach "avoids the Sixth Amendment concerns that would arise from sentencing courts' making findings of fact") (quotation marks omitted); *accord United States v. Davis*, 588 U.S. 445, 454 (2019) (tracing the categorical approach's roots to the "Sixth Amendment complications" that arise when statutes require "a judge, not a jury, [to] make findings about th[e] underlying conduct" associated with a past conviction). If the Constitution required juries to apply the law as well as find the facts, the categorical approach would disappear. But that notion finds little support in constitutional text or history. *See, e.g.*, *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935) ("The controlling distinction between the power of the court and that of the jury is that the former is the power to determine the law and the latter to determine the facts."); *United States v. Battiste*, 24 F. Cas. 1042, 1043 (C.C.D. Mass. 1835) (Story, Circuit Justice) ("I hold it the most sacred constitutional right of every party accused of a crime, that the jury should respond as to the facts, and the court as to the law."); *Georgia v. Brailsford*, 3 Dall. 1, 3 (1794)

(Chief Justice Jay charging jury in original-jurisdiction case and reciting "the good old rule, that on questions of fact, it is the province of the jury, on questions of law, it is the province of the court").

So after finding the fact of Dawson's past convictions, the Court was authorized to determine whether any served as predicates for §§ 2251–2252A's sentencing enhancements.

Nothing in *Erlinger* supplanted this longstanding rule by "requir[ing]" the jury "to find beyond a reasonable doubt" that one of the prior convictions "was a predicate offense." Sentencing Memo at 4–5. *Erlinger* followed a line of decisions repeatedly recognizing that "[o]nly a jury may find '*facts* that increase the prescribed range of penalties.'" *Erlinger*, 602 U.S. at 833 (emphasis added) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). Decisions about the legal significance of those facts, in contrast, have long stood within a judge's bailiwick. *See, e.g.*, *Erlinger*, 602 U.S. at 838 ("the district court" could not only "identify [the defendant's] previous convictions and the legal elements required to sustain them" but also "determine whether" those convictions "triggered ACCA's enhanced penalties"); *Taylor v. United States*, 495 U.S. 575, 600 (1990) ("the sentencing court … appl[ies]" enhancement statutes).

Dawson makes no headway by invoking the Sixth Circuit's recent decision in *United States v. Florence*, 163 F.4th 1017 (2026). *Florence* confirmed that "the *Almendarez-Torres* exception" survived *Erlinger*. *Id.* at 1025 ("The district court's findings in the instant case fall squarely within the *Almendarez-Torres* exception as explained in *Erlinger*."). The *Florence* judge didn't even have to find the fact of the defendant's prior convictions because the defendant "stipulated that … he was convicted of attempted transportation of child pornography … and possession of child pornography" under federal law. *Id.* (cleaned up). Dawson finds great significance in this fact. He points out that here, "unlike in *Florence*, there was no concession … upon which the Court [could] rely to conclude that the prior conviction qualifies." Sentencing Memo at 6. But stipulation does little to distinguish that scenario from Dawson's very similar situation: he hasn't admitted, but neither has he *contested*, the record of his past convictions. Nor does *Florence* suggest that the rule of *Almendarez-Torres* somehow turns on the existence of a stipulation.[4]

---

[4] Jason Florence "argue[d] that the relevant inquiry involves *two* steps: first, whether [he] was convicted of an offense, and second, whether that offense is a qualifying predicate." 163 F.4th at 1025 (emphasis added). And he "protest[ed] that he stipulated only to the former, not the latter." *Id.* But his federal-law convictions made "such bifurcation … illusory": "the district judge was essentially required to match numbers," "look[ing] no further than the table of contents of the U.S. Code to determine that Florence 'had a prior conviction under [chapter 110]' and thus was subject to the ten-year mandatory minimum." *Id.* (quoting

6

**C. Statutory Application.** Dawson also objected that none of his 26 previous Kentucky convictions satisfied the prior-conviction provisions in sections 2251 and 2252A.

To "resolv[e] the question," judges apply "the categorical approach, most familiar to connoisseurs of the Armed Career Criminal Act but also applicable to the child pornography statute[s]." *United States v. Parrish*, 942 F.3d 289, 295 (6th Cir. 2019). In assessing the appropriateness of a collateral consequence, courts "disregard how the defendant actually committed" a past offense and instead compare the statute under which he was convicted to the statute that imposes the collateral consequence. *Davis*, 588 U.S. at 452. *See also Taylor*, 495 U.S. at 602 (looking to the "fact of conviction and the statutory definition of the prior offense" rather than the defendant's actual conduct). "Then [judges] look to the sentencing enhancement to determine how close the match must be." *Parrish*, 942 F.3d at 296.

Some categorical statutes demand a tight match between predicate offense and collateral consequence. "At the most restrictive, an additional-consequence statute can use the word 'is' to require that the entirety of the prior offense be 'the same as, or narrower than,'" the "comparator term" used in the federal statute. *Baxter v. Kennedy*, 136 F.4th 70, 83 (4th Cir. 2025) (quoting *Descamps*, 570 U.S. at 257–58 and discussing 18 U.S.C. § 924(e)(2)(B)).

But the "match doesn't have to be nearly as close for the child pornography statute" as for many other categorical statutes. That's "because a state crime triggers the enhancement if it 'relates to' the relevant conduct." *Parrish*, 942 F.3d at 296 (brackets omitted) (quoting 18 U.S.C. § 2252(b)(1)). The prior offense needn't fall strictly within the offenses described by the statutory enhancement; it "need not mirror" the federal statute "in order to trigger enhancement." *Mateen*, 806 F.3d at 861. Instead, the prior offense must only *relate* to the conduct listed in the federal statute. *Id.*

"The ordinary meaning of" the phrase "'relating to,'" moreover, "is a broad one—'to stand in some relation; to have bearing or concern; to pertain; to refer; to bring into association with or connection with.'" *Morales v. Trans World Airlines*, 504 U.S. 374, 383 (1992) (quoting BLACK'S LAW DICTIONARY 1158 (5th ed. 1979)). Without a textual or contextual qualifier to limit their reach, "relations stop nowhere." *Mont v. United States*, 587 U.S. 514, 522 (2019) (cleaned up). Which is why many courts have struggled to apply the term: "as many a curbstone philosopher has observed,

---

§ 2252A(b)(2)). *Florence* left open the possibility that "th[e] two-step process may accurately describe other cases." *Id.* But it never suggested that *Erlinger* requires juries to handle a hypothetical step two.

everything is related to everything else." *California Division of Labor Standards Enforcement v. Dillingham Construction*, 519 U.S. 316, 335 (1997) (Scalia, J., joined by Ginsburg, J., concurring). But here Congress has given judges a relatively straightforward task—deciding whether a prior offense falls within a group of sex-related convictions. And Congress provided this broad phrase of relationship without any corresponding limitation—just the list of offenses. "Nothing in § 2252A(b)(2)," or the similarly worded § 2251(e), "shows that Congress qualified the scope of the sexual abuse offenses listed in th[ose] statute[s] and what 'relates to' them." *United States v. O'Neal*, 835 F. App'x 70, 72 (6th Cir. 2020) (brackets deleted).

Given this lack of qualification, the Sixth Circuit has repeatedly emphasized the broad sweep of the child-pornography enhancements. "Unlike some other predicate-offense enhancements … the sentencing enhancement described at § 2251(e) does not require a perfect match between the predicate offense and the enhancement-qualifying conduct." *United States v. Sykes*, 65 F.4th 867, 885 (6th Cir. 2023). Rather, "the phrase 'relating to' triggers the sentencing enhancement for any state offense that stands in some relation, bears upon, or is associated with" the "generic offense" described in the federal statute. *Id.* (quotation marks omitted). Sentencing judges ask only whether "prior convictions *associated with* the" relevant prior offenses to "trigger the enhancement." *United States v. Deakins*, 152 F.4th 693, 713 (6th Cir. 2025) (quotation marks omitted). Other circuits follow the same approach. *See Mateen*, 806 F.3d at 860 (collecting out-of-circuit authority). The upshot is that "Section 2251(e) ensures that a broad range of prior federal convictions will qualify," and likewise renders it "implausible that Congress … chose to restrict qualifying state offenses" in a more stringent manner. *United States v. Sanchez*, 440 F. App'x 436, 440 (6th Cir. 2011).

So to decide whether someone's prior convictions were "*associated with*" the child-pornography offenses identified by Congress, *Deakins*, 152 F.4th at 713 (quotation marks omitted), judges ask whether "the least culpable conduct proscribed by the [state] statute relates to sexual abuse," *O'Neal*, 835 F. App'x at 71. If so, "the entire statute" qualifies for the enhancement. *Id.*

Dawson pled guilty to possessing (KY. REV. STAT. § 531.335) and distributing (§ 531.340) child pornography, which both sections define as "matter portraying a sexual performance by a minor." When he admitted his guilt in 2020, Kentucky law defined the forbidden materials as: "any matter which visually depicts an actual sexual performance by a minor person." § 531.335.

"Sexual performance," in turn, "means any performance … which includes sexual conduct by a minor." § 531.300(6). And "[p]erformance" just means "any play,

8

motion picture, photograph or dance," as well as "any other visual representation exhibited before an audience." § 531.300(5).

The load-bearing term for §§ .335 and .340 is therefore "sexual conduct by a minor," which "means":

> (a) Acts of masturbation, homosexuality, lesbianism, beastiality [*sic*], sexual intercourse, or deviant sexual intercourse, actual or simulated;
>
> (b) Physical contact with, or willful or intentional exhibition of the genitals;
>
> (c) Flagellation or excretion for the purpose of sexual stimulation or gratification; or
>
> (d) The exposure, in an obscene manner, of the unclothed or apparently unclothed human male or female genitals, pubic area or buttocks, or the female breast, whether or not subsequently obscured by a mark placed thereon, or otherwise altered, in any resulting motion picture, photograph or other visual representation, exclusive of exposure portrayed in matter of a private, family nature not intended for distribution outside the family;

KY. REV. STAT. § 531.300(4).

Obvious to the point of tautology is the observation that each category of "sexual conduct by a minor" is at least "*associated with*," if not tantamount to, child pornography and "sexually explicit conduct." *Deakins*, 152 F.4th at 713 (discussing the neighboring enhancement for two or more prior convictions relating to "the sexual exploitation of children," *see* n.2 above). The entire point of these definitions is to define and prohibit the exploitative viewing, possessing, and distributing of depictions of any sexual conduct involving a minor child. How would photographing a child engaged in masturbation, homosexuality, bestiality, intentional exhibition of the genitals, flagellation, and so on *not* be exploitative? No exegesis of consent or maturity or art or predation is necessary to connect "sexual conduct" with "sexual exploitation" in the context of "a performance by a minor person." Under the Sixth Circuit's binding caselaw, possession and distribution of child porn in violation of Kentucky law amounts to a "state offense that stands in some relation, bears upon, or is associated with" the "generic offense" of possession and distribution of child porn under the federal enhancement statute. *Sykes*, 65 F.4th at 885.

Dawson resists this commonsensical interpretation through two creative but unpersuasive arguments.

*First*, Dawson perceives several small differences between the Kentucky and federal statutes that, in his view, render possession and distribution convictions under state law unrelated to possession and distribution under federal law. Kentucky law, he notes, covers "acts of homosexuality or lesbianism," "willful or intentional exhibition of the genitals," "flagellation or excretion for the purpose of sexual stimulation," and "play[s] or dance[s]." At least in some circumstances, images of this sort of "sexual conduct" standing alone don't amount to, or even relate to, "sexually explicit conduct" under federal law. Sentencing Memorandum (DN 112) at 10–11.

Dawson's right that Kentucky law uses a few phrases that federal law lacks. But he's wrong that the federal law's terms wouldn't cover all these examples. Federal law covers "sexual intercourse," including anal and oral sex, "whether between persons of the same or opposite sex," §§ 2256(2), (8), even though it doesn't identify "acts of … homosexuality [or] lesbianism," KY. REV. STAT. § 531.300(4)(a), in those terms or as their own category. The federal law also covers "masturbation" and "lascivious exhibition of the anus, genitals, or pubic area of any person," § 2256(2)(A), even though it doesn't enumerate "[f]lagellation or excretion for the purpose of sexual stimulation," KY. REV. STAT. § 531.300(4)(c). But it does cover "sadistic or masochistic abuse," § 2256(2)(A)(iv), and—as mentioned—"lascivious exhibition." Similarly, although federal law doesn't specifically mention "plays" or "dances," it forbids "*any* visual depiction" of "sexually explicit conduct." § 2256(8) (emphasis added). Which means that masturbation, intercourse, exhibition, flagellation, and so on are captured whether or not they somehow take the form of a dance or play.

Dawson fares little better in suggesting that the phrase "homosexuality or lesbianism" captures mere "kissing"—or that the phrase "intentional exhibition of genitals" covers mere nudity whether or not it's lascivious. Sentencing Memo at 11. Kentucky courts, like federal courts, interpret text in context—not a vacuum. *See, e.g.*, *Commonwealth v. Amboree*, 730 S.W.3d 887, 891 (Ky. 2026) ("We interpret statutes as a whole."). Although some contexts *might* warrant describing same-sex kissing as "homosexual" or "lesbian," "kissing" is an unrealistic interpretation of the phrase "[a]cts of … homosexuality [or] lesbianism" used to define "sexual conduct by a minor," especially in a sentence that also lists "masturbation, … bestiality, sexual intercourse," and "deviant sexual intercourse." § 531.300. Judges, like most humans, read words in the light cast by surrounding words. *See* SCALIA & GARNER, READING LAW 195–98 (2012) (*noscitur a sociis*). Especially in the context of a statute focused on materials that capture a sexual performance of sexual conduct—the phrase "intentional exhibition of the genitals," § 531.300(4)(b), does not reduce the

10

hypothetical nudity-of-any-kind-for-any-reason that defense counsel discussed during sentencing. *See also* Sentencing Memo at 11 (similar). Dawson identifies no Kentucky decisions suggesting that the Commonwealth's laws reach so far. In fact, he doesn't cite *any* Kentucky decisions in his briefing. So he gives the Court no reason to find "a realistic probability," as opposed to "a theoretical possibility," that Kentucky courts "would apply its statute to" the hypothetical innocent "conduct" that Dawson imagines might've just as easily led to his state pornography convictions. *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

*Second*, Dawson urges the Court to reject the litany of Sixth Circuit decisions relying on the breadth of the phrase "related to" and instead require a perfect match between Kentucky crime and federal sentencing enhancement. *See* Sentencing Memo at 11 ("Because Kentucky la[w]" is "broader than" its federal counterpart, "prior convictions" in Kentucky "d[o] not qualify as … predicate[s]"). This contention turns upon Dawson's reading of *United States v. Davis*, 751 F.3d 769 (6th Cir. 2014), in which the Sixth Circuit held that an Ohio pandering conviction didn't support a federal child-sex-crime sentencing enhancement. Dawson argued, in his briefing and during the sentencing hearing, that *Davis* effectively requires a perfect match—as in, no hypothetical fact patterns that might fall within the state offense but outside the federal category.

That's incorrect. Like all the decisions cited above, *Davis* acknowledged that a state offense "triggers the statutory mandatory minimums … only if the elements of [that offense] 'relate to' the possession or distribution of 'child pornography' as federally defined. 751 F.3d at 776 (brackets deleted). The *Davis* panel then determined that the Ohio statute covered "[n]udity alone." *Id.* Without further reasoning, the panel held: "Accordingly, a conviction pursuant to [the Ohio statute] is not categorically a predicate offense." *Id.* *Davis* thus teaches that a conviction under an Ohio criminal law that could be violated by a photo of a nude child, and nothing more, doesn't sufficiently "relate to" the child-pornography offenses triggering the greater federal sentencing range. The opinion's terse analysis says very little about *why* that is so, or how it might affect different fact patterns under different state laws. But as noted, *Davis* tracks the same statutory text and analysis set out above. And crucially, other Sixth Circuit decisions both before and since *Davis* seem to interpret the federal statute more broadly and other state statutes less strictly. If *Davis* stepped off the otherwise consistent path of the caselaw, then subsequent precedents have already corrected course.

Alternatively, Dawson suggests that *Davis* nevertheless still controls cases involving underlying child-pornography felonies, even if a different rule applies to hands-on abuse. Those later precedents, he emphasized during the hearing, discussed more serious state offenses. But Dawson pointed to no language in *Davis*

11

or any other opinion before or since drawing his preferred distinction. Which makes sense, given the lack of a principled textual distinction between hands-on and hands-off predicates within the text of §§ 2251–52A. This, along with the many subsequent Sixth Circuit decisions relying on the breadth of "related to," counsels against hearing in *Davis*'s silence a doctrinal dog that has never barked.

**D. Dawson's Ultimate Sentence.** This opinion follows and clarifies, but does not displace, the Court's ruling from the bench during Dawson's July 21 sentencing hearing. In the end, no aspect of his sentence turned upon the application of these sentencing enhancements—even though deciding the sentencing statutes' proper application was appropriately raised by counsel and therefore necessary for judicial resolution.

That the enhancements didn't prove dispositive is due to the great discretion afforded sentencing judges under the advisory Guidelines regime. That discretion is especially enhanced when—as here—a defendant has been convicted on numerous related charges that carry lengthy maximum sentences. As noted above, Dawson's Guidelines range—based on the offense level and criminal history—was life imprisonment. That exceeded the statutory maximum for any of his nine offenses. In this scenario, to calculate a new Guideline range consistent with the sentencing statutes, courts add the statutory maximum for each count of conviction. *See* U.S.S.G. § 5G1.1(a); § 5G1.2(d) & app. note 3. *See generally United States v. Graham*, 327 F.3d 460, 465 (6th Cir. 2003) ("Under § 5G1.2(d), in cases in which the sentence with the highest statutory maximum is less than the total punishment under the Guidelines, sentences are to run consecutively to the extent necessary to reach the total punishment."). Since the sentencing enhancements applied, that computed an astronomical Guidelines range of 3,960 months, or 330 years. If the sentencing enhancements didn't apply, the calculation fell to 2,160 months plus 120 months, or 180 years plus 10 years.

But the Court's ultimate responsibility, under the sentencing laws, is of course to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" Congress set out in 18 U.S.C. § 3353(a). Given those factors, and the horrific nature of Dawson's offenses, the Court explained on the record that the sentence would be 75 years regardless of whether the statutory enhancements applied. This significant sentence was available, consistent with the statutory minimum and maximum terms, given courts' discretionary authority under § 3584(b) to impose sentences concurrently or consecutively to satisfy the objectives enumerated in § 3553(a). Here that discretion calls for a sentence that imposes a serious and incapacitating sentence for each of Dawson's 9 new federal offenses, which followed close on the heels of his 26 prior state child-porn convictions. This

12

opinion reaffirms, but doesn't change, the Court's decision and sentence as imposed in open court.

Benjamin Beaton, District Judge

United States District Court

July 29, 2026

13